UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:14CR116 CEJ/DDN |
| ANTHONY DAVIS, | ) ) ) |
| Defendant. | ) |

## GOVERNMENT'S TRIAL BRIEF

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Dianna R. Collins and John J. Ware, Assistant United States Attorneys for said District, and submits the following trial brief.

### I.  FACTS

From 2009 through June 2013, defendant Anthony Davis was the president of National Postal Mail Handlers Local 314 located in Hazelwood, Missouri.  Mail Handlers 314 is a division of the Laborers' International Union of North America AFL-CIO and is covered by the (LMRDA).  Local 314 represents mail handlers employed by the United States Postal Service (USPS) in four locations: Saint Louis, Missouri Processing and Distribution Center, Saint Louis, Missouri Metro Annex, Saint Louis, Missouri Bulk Mail Center, and Columbia, Missouri Processing and Distribution Center. During his presidency, defendant was responsible for the operations of Local 314, and had signature authority over its checks.

Local 314 maintained a sole checking account at Citizens National Bank until January 2013, and thereafter at Royal Banks of Missouri.  All receipts from Local 314 were deposited into the Citizens National Bank account and later into Royal Banks of Missouri account.

Pursuant to the local constitution, by-laws, and established practice, the president and treasurer of the Local had the authority to make disbursements for the Local. Union disbursements, including expense reimbursements, required the submission of a business expense form and receipt or invoice. The business expense form and receipt/invoice was submitted to the treasurer for review. Once approved by the treasurer, the treasurer wrote and signed a check for the disbursement. The treasurer submitted the business expense form, the signed check, and the receipt/invoice to the president for his signature. The president returned the signed check and documents to the treasurer who then issued the check. This process was the same for occasions when the president or treasurer sought reimbursement.

Beginning in 2009, Davis created approximately 56 fictitious invoices on his union office computer and submitted them to the Local 314's treasurer as a justification for expense reimbursements. Using this method, Davis illegally took approximately $22,355.25 from Local 314. The defendant also received a total of approximately $13,413.02 of unauthorized disbursements in which the check memos falsely indicated they were for computer repairs, cleaning services, and pest control with no supporting documentation.

In May 2013, the treasurer of Local 314 was injured and unable to work. Davis visited the treasurer at her home and convinced the treasurer to sign fifteen blank checks for convenience purposes. Of the fifteen blank checks that were pre-signed by the treasurer, seven of the checks were issued to Davis without backup records or explanation. These seven checks totaled $4,890.80.

In or about August of 2012, Davis traveled to Portland, Oregon for a union related conference. Davis paid the Portland Hilton hotel $1,460 for hotel accommodations from the

union checking account. However, a few days later, Davis deposited a separate check in the same amount, written to the Portland Hilton, into his personal bank account.

Neither the treasurer, executive board, nor the membership approved any of the above detailed conduct.

## II.  LEGAL ISSUES

A.  Background of the LMRDA

The LMRDA, Title 49, United States Code, Section 401 et seq. asserted federal jurisdiction over internal union affairs and conduct of union officers of labor organizations in response to widespread misuse and mismanagement of union funds, including the financing of illegal enterprises. The LMRDA guaranteed certain rights to union members, mandated certain reporting requirements, provided for the public disclosure of certain financial information, and established certain requirements for officer elections, among other things. The Department of Labor was tasked with overseeing the reporting provisions of the LMRDA and any resulting investigations into embezzlement of union funds.

The LMRDA defines "labor organization" as a "labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body." Title 29, United States Code, Section 402(i).

3

Federal jurisdiction, by way of the commerce clause, is established if the labor organization "(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended, or the Railway Labor Act, as amended; or (2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or (3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or (4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or (5) is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body." Title 29, United States Code, Section 402(j).

Each labor organization is required to adopt a constitution and bylaws. Title 29, United States Code, Section 431(a). Union officers must abide by the rules promulgated in these documents in the management of union funds. United States v. Goad, 490 F.2d 1158, 1161 (8th Cir. 1974).

Section 501(c) was designed to protect membership from the corruption of union officials and employees. United States v. Sullivan, 498 F.2d 146, 147-50 (1st Cir. 1974). By its provisions, Section 501 creates a fiduciary duty of an officer to his labor organization. Title 49, United States Code, Section 501(a); United States v. Rubin, 591 F.2d 278, 283 (5th Cir. 1979).

4

The statute punishing a breach of this fiduciary duty is broad enough "to cover almost every kind of taking," of funds or property of the union, regardless of the means employed.  United States v. Harmon, 339 F.2d 354, 357 (6th Cir. 1964).

B.     Elements of the Offense

The Indictment charges defendant with embezzlement from a labor organization, in violation of Title 29, United States Code, Section 501(c).  The elements necessary to establish proof of such a violation are 1) that the entity was a labor organization engaged in an industry affecting interstate or foreign commerce; 2) the defendant was either an officer of, or directly employed by, the labor organization; 3) the defendant embezzled, stole, or abstracted money, funds, property, or assets of the labor organization; and 4) the defendant acted with fraudulent intent to deprive the labor organization of its use of its money, funds, property, or assets.  United States v. Gibson, 675 F.2d 825, 828 (6th Cir. 1982).

The jurisdictional requirements of element one are discussed above.  The National Postal Mail Handlers Union, Local 314 certainly meets the definition and sufficiently affects interstate commerce, to be under the purview of the LMRDA.  See United States v. Morales-Rodriguez, 467 F.3d 1, 10 (1st Cir. 2006) (Union of Puerto Rican police officers subject to LMRDA); United States v. Hartsel, 199 F.3d 812, 819 (6th Cir. 1999) (United Auto Workers Local 12 charitable fund subject to LMRDA).

An officer means "any constitutional officer, any person authorized to perform the functions of president, vice-president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body."  Title 29, United States Code, Section 402(n).  This definition extends to any person employed by a union, and is not limited to those with a fiduciary duty to the union.  United States v. Lore, 430 F.3d

5

190 (3d Cir. 2005).  For example, an attorney for the union is deemed an employee.  <u>United States v. Capanegro</u>, 576 F.2d 973 (2d Cir. 1978).  Even chapel (subunit of local union) chairmen are deemed officers of the union.  <u>United States v. Ford</u>, 462 F.2d 199 (7th Cir. 1972). <u>See</u> <u>United States v. Seidman</u>, 156 F.3d 542 (4th Cir. 1998) (printer of union newspaper an employee).

Prosecutions under 501(c) can be brought on either of two theories:  one, that there was unauthorized expenditures, or two, that the expenditures were authorized but for a wrongful purpose.  <u>United States v. Welch</u>, 728 F.2d 1113, 1117 (8th Cir. 1984); <u>United States v. Gibson</u>, 675 F.2d 825 (6th Cir. 1982).  In cases involving authorized use, the government must prove the defendant lacked a good faith belief that the expenditure was for the legitimate benefit of the union, whereas in cases involving unauthorized expenditures the government need only prove fraudulent intent.  <u>United States v. Dixon</u>, 609 F.2d 827 (5th Cir. 1980).  Because fraudulent intent is necessary for conviction, good faith and mistake are valid defenses.  <u>United States v. Hart</u>, 417 F. Supp. 1314 (S.D. Iowa 1976); <u>United States v. Felice</u>, 609 F.2d 276 (6th Cir. 1979). Lack of union authorization however, is not an essential element and need not be pled in the Indictment.  <u>United States v. Cantrell</u>, 999 F.2d 1290, 1291 (8th Cir. 1993); <u>United States v. Mett</u>, 178 F.3d 1058 (9th Cir. 1999); <u>United Broth. of Carpenters and Joiners of America v. Building and Const. Trades Dept.</u>, 911 F. Supp. 2d 1118, 1137 (E.D. Wash. 2012).  And although fraudulent intent is a necessary element, as embezzlement and stealing are <u>malum</u> <u>in</u> <u>se</u> crimes, they inherently incorporate the bad purpose required.  <u>Woxberg v. United States</u>, 329 F.2d 284, 290 (9th Cir. 1964); <u>United States v. Belt</u>, 574 F.2d 1234, 1238 (5th Cir. 1978); <u>Colella v. United States</u>, 360 F.2d 792 (1st Cir. 1966) (abstraction and conversion require willfulness).  Circumstantial evidence alone can be sufficient to prove fraudulent intent and

6

obtain a conviction.  Woxberg v. United States, 329 F.2d 284, 293-4 (9th Cir. 1964).  Lack of authorization or benefit to the union are factors that establish fraudulent intent.  United States v. Welch, 728 F.2d 1113, 1120 (8th Cir. 1984).

It is not necessary that the government prove what the defendant did with the misappropriated assets.  Doyle v. United States, 318 F.2d 419 (8th Cir. 1963).  However, as explained below, unexplained wealth is probative evidence of guilt.  More directly, actions regarding false invoicing, forging checks, and obtaining multiple reimbursements for the same expense (all of which the defendant took) are proof of fraudulent intent.

"When one sends the union a voucher known to be an improper one, and then receives payment of the voucher, the crime is completed."  United States v. Dibrizzi, 393 F.2d 642, 645 (2d Cir. 1968).  Accepting multiple reimbursements for expenses on union travel violates the statute.  See United States v. Walsh, 928 F.2d 7 (1st Cir. 1991); United States v. Durnin, 632 F.2d 1297 (5th Cir. 1980).  Likewise, the forging of a signature on an union check, and then presenting it for payment constitutes a 501(c) violation.  United States v. Pavloski, 574 F.2d 933 (7th Cir. 1978); United States v. Oates, 467 F.2d 129 (3d Cir. 1972).

In United States v. Stockton, 788 F.2d 210 (4th Cir. 1986), the defendant was president of a local chapter of the UAW.  The union offices had been cleaned by a legitimate janitorial service whose contract was terminated by the union.  Stockton then falsely stated that he had contracted with M. Woods Janitorial Service to perform the cleaning.  Checks, co-signed by the vice-president, were left with Stockton to be picked up by M. Woods.  These checks were deposited into Stockton's bank account, according to Stockton because he cashed them out and paid M. Woods in cash.  There was no telephone listing for M. Woods Janitorial Service, the business wasn't registered with the state, and no witness ever observed the janitorial service at

7

work.  There was evidence that some cleaning of the offices was performed by someone, however, the level of cleaning was not always satisfactory.  After being convicted at trial, Stockton appealed, claiming the evidence insufficient.  The court found the evidence met the elements of embezzlement.  The court also rejected Stockton's defense that the offices were in fact cleaned and thus the union received full value for its money.  "Embezzlement is not excused by restitution of goods or services of equivalent value."  Id. at 219.

C.      Unexplained Wealth

The government intends to introduce evidence of defendant's unexplained wealth, including evidence of out-of-town travel, during the period of the crime charged.  Evidence of unexplained wealth subsequent to the commission of a crime is generally admissible because it supports the inference that the wealth is the fruit of the crime charged.  United States v. Wesley, 648 F.3d 640, 645 (8th Cir. 2011).  This is particularly true with regard to "the sudden, unexplained acquisition of wealth . . . in larceny or crimes involving a motive of enrichment."  Id. (citing United States v. Crisp, 435 F.2d 354, 360 (7th Cir. 1970)).

The Eighth Circuit has consistently upheld the admission of unexpected wealth in a variety of cases.  United States v. Hankins, 931 F.2d 1256, 1259 (8th Cir. 1991) (defendant's payment for bond and attorney two days after bank robbery probative to participation in crime); United States v. Thompson, 686 F.3d 575, 580 (8th Cir. 2012) (unexplained cash supports inference of intent to distribute narcotics).  Such evidence is admissible "even in the absence of direct proof of a defendant's prior impecuniousness."  United States v. Rodriguez, 484 F.3d 1006, 1012-13 (8th Cir. 2007).  Further, wealth that doesn't match stated income supports the inference of criminality.  United States v. Cuervo, 354 F.3d 969, 987 (8th Cir. 2004).

In embezzlement type cases in particular, large expenditures or acquisition of unexplained sums of money during time of charged crime, is admissible evidence of the embezzlement. United States v. Lattimore, 902 F.2d 902 (11th Cir. 1990); Hansberry v. United States, 295 F.2d 800 (9th Cir. 1961). Travel records can be "proof that a defendant is living far above the means provided by his disclosed income [and] is of great probative value in a case involving a crime where the motive is financial gain. United States v. Falley, 489 F.2d 33, 39 (2d Cir. 1973).

D.   Summary Charts

The Government intends to employ the well-established and customary practice in criminal cases of submitting summaries of evidence. The Government will call to the stand Agent Scharr who will introduce into evidence summaries that will be prepared based on the Government exhibits. This witness will be asked to summarize documents obtained by subpoena and search, various banking records, and situational events and then these summaries will be offered into evidence.  The practice of using summaries in criminal trials has long been held proper. United States v. Johnson, 319 U.S. 503, 519 (1943); United States v. Lewis, 759 F.2d 1316, 1329 #6 (8th Cir. 1985); United States v. King, 616 F.2d 1034, 1041 (8th Cir. 1980).

The use of summaries in this case alleging embezzlement is particularly appropriate because the jury is being asked to absorb and understand large numbers of exhibits containing financial information. As Federal Rule of Evidence 1006 provides:

> The contents of voluminous writings…which cannot be conveniently examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for

9

examination or copying, or both, by other parties at a reasonable time or place. The Court may order that they be produced in Court.

The Government anticipates that all information upon which its witness relies will be admitted into evidence. However, the witness will summarize and analyze this information in order to assist the jury. Assumptions made in the Government's charts "are permissible as long as supporting evidence has been presented previously to the jury…and where the court has made it clear that the ultimate decision should be made by the jury as to what weight should be given to the evidence." Means, 695 F.2d 811, 817 (5th Cir. 1983). The summary witness offered during trial will offer opinions as to his analysis as provided by Federal Rule of Evidence 701.

Respectfully Submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Dianna R. Collins*
DIANNA R. COLLINS, #59641MO
Assistant United States Attorney

*/s/ John J. Ware*
JOHN. J. WARE, #40880MO
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2014, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Dianna R. Collins*
DIANNA R. COLLINS, #59641MO
Assistant United States Attorney

*/s/ John J. Ware*
JOHN J. WARE, #40880MO
Assistant United States Attorney